B 104 [08/07]

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| | |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| | |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee | ☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11 - Recovery of money/property - § 542 turnover of property
☐ 12 - Recovery of money/property - § 547 preference
☐ 13 - Recovery of money/property - § 548 fraudulent transfer
☐ 14 - Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21 - Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31 - Approval of sale of property of estate and of co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41 - Objection / revocation of discharge - § 727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51 - Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66 - Dischargeability - § 523(a)(1),(14),(14A) priority tax claims
☐ 62 - Dischargeability - § 523(a)(2), false pretenses, false representation, actual fraud
☐ 67 - Dischargeability - § 523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61 - Dischargeability - § 523(a)(5), domestic support
☐ 68 - Dischargeability - § 523(a)(6), willful and malicious injury
☐ 63 - Dischargeability - § 523(a)(8), student loan
☐ 64 - Dischargeability - § 523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65 - Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71 - Injunctive relief - reinstatement of stay
☐ 72 - Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81 - Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91 - Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01 - Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§ 78aaa *et.seq.*
☐ 02 - Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

B 104

B 104 (Page 2) [08/07]

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR | | BANKRUPTCY CASE NO. |
| DISTRICT IN WHICH CASE IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) | |

# INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature**. This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

B 104

1  Vanderhoff Law Group
   Alan Vanderhoff, Cal. Bar No. 138032
2  Jeanne C. Vanderhoff, Cal. Bar No. 138011
   401 B Street, Ste. 1470
3  San Diego, California  92101
   Telephone: (619) 299-2050
4
5  Attorneys for Bellagio Capital, Inc.

6

7

8                  UNITED STATES BANKRUPTCY COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10  In re                                    Adv. No.

11  J. DOUGLASS JENNINGS and PEGGY L.        Bank. Case No. 11-04720-LA7
    JENNINGS,
12                                           COMPLAINT FOR DECLARATORY
                             Debtors.        RELIEF
13  Bankruptcy Case No. 11-04720-LA7

14
15  BELLAGIO CAPITAL, INC., a California
    Corporation,
16
                             Plaintiff,
17  v.

18  APRIL M. GIFFIN and SARAH SUZANNE
    MURPHY, as Trustees of the JENNINGS
19  CHILDREN'S TRUST; LESLIE T.
    GLADSTONE, TRUSTEE, and DOES 1
20  through 20,

21                           Defendants.

22

23

24      Plaintiff, Bellagio Capital, Inc., a California corporation, alleges as follows:

25                     **JURISDICTION AND VENUE**

26      1.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §

27  1334, 11 U.S.C. § 105 and General Order 312-D of the United States District Court for the

28  Southern District of California.

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1409(a ) because the underlying bankruptcy case is pending in this district.

3.      This is a core matter pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (N) because it is an action to determine if certain property is property of the above-captioned bankruptcy estate.

4.      This Court may, consistent with Article III of the Constitution, enter final orders or judgments and conduct a trial absent consent of the parties. If it is determined that this Court may not enter final orders or judgments or conduct a trial absent consent of the parties, the plaintiff hereby consents.

### THE PARTIES

5.      Bellagio Capital, Inc. ("Bellagio") is a California Corporation.

6.      Plaintiff is informed and believes and thereon alleges that Defendant Jennings Children's Trust ("Children's Trust") is a trust purportedly formed on or after October 13, 2009 under California law for the benefit of the Debtors' children and grandchildren.

7.      Plaintiff is informed and believes and thereon alleges that April M. Giffin ("Giffin") is an individual residing in this judicial district.  Plaintiff is informed and believes and thereon alleges that Giffin is daughter of the Debtors and a trustee of the Children's Trust.

8.      Plaintiff is informed and believes and thereon alleges that Sarah Suzanne Murphy ("Murphy") is an individual residing in this judicial district.  Plaintiff is informed and believes and thereon alleges that Murphy is the daughter of the Debtors and a trustee of the Children's Trust.

9.      Leslie T. Gladstone (the "Trustee") is the duly appointed chapter 7 trustee in the above-captioned bankruptcy case.

### GENERAL ALLEGATIONS

**A. The Jennings Bankruptcy Case.**

10.      J. Douglass Jennings and Peggy L. Jennings (collectively, the "Debtors") are the debtors in the above-captioned bankruptcy case (the "Jennings Bankruptcy Case").

11.      The Jennings Bankruptcy Case was originally filed as a chapter 11 case on March 24, 2011 (the "Petition Date").

12.    The Jennings Bankruptcy Case was converted to a case under chapter 7 by an order entered on or about March 15, 2012.

**B. The Ownership of the Bellagio Stock and Perjury and Falsification of Records by Douglass Jennings.**

13.     Plaintiff is informed and believes and thereon alleges that, on or after January 1, 2010, Debtors were the co-trustees of The Jennings Family Trust dated November 14, 1985, a self-settled revocable trust (the "Family Trust").  References to the "Debtors" in this Complaint include the Debtors in their capacities as settlors, trustees and/or beneficiaries of the Family Trust.

14.    Prior to the bankruptcy, the Debtors were the owners and holders of 50% of the shares of common stock of Bellagio (the "Bellagio Stock").

15.    The Children's Trust has no stock or other ownership interest in Bellagio.

16.    The Bellagio Stock is the property of the Jennings bankruptcy estate (the "Bankruptcy Estate").

17.    Douglass Jennings knowingly and fraudulently concealed from the Trustee and the United States Trustee property belonging to the Bankruptcy Estate (i.e., the Bellagio Stock) by fabricating a transaction that never took place. Douglass Jennings has given false testimony, signed false declarations, and filed falsified documents, in order to conceal the fact that the Bankruptcy Estate owns the Bellagio Stock and to steal the Bellagio Stock for his own benefit. In particular, Douglass Jennings stated that the Family Trust transferred the Bellagio Stock to the Children's Trust on January 1, 2010. In fact, that transaction never took place.

18.    Douglass Jennings knowingly and fraudulently made false oaths with regard to the Bellagio Stock. Douglass Jennings also knowingly and fraudulently made a false declaration signed under penalty of perjury regarding the Bellagio Stock.

19.    Douglass Jennings lied under oath about the Bellagio Stock in his bankruptcy schedules, at his Section 341 Meeting of Creditors, and in a declaration filed in the Jennings Bankruptcy Case in opposition to a motion for the appointment of a trustee (the "October 2011 Declaration") which was filed as Docket No. 209.

3

20. Douglass Jennings stated in answer to Question 10 of his Statement of Financial Affairs that the Debtors had transferred the Bellagio Stock to the Children's Trust. That statement was false.

21. At his Section 341 Meeting of Creditors held on April 26, 2011, Douglass Jennings testified under oath that the Bellagio Stock was transferred to the Children's Trust on January 1, 2010. [See Docket No. 209, pp. 40 and 92.] That testimony was false.

22. In the October 2011 Declaration, Douglass Jennings again testified under oath that the Bellagio Stock was transferred to the Children's Trust on January 1, 2010. [See Docket No. 209, p. 40.] That testimony was also false.

23. Douglass Jennings knowingly and fraudulently presented falsified documents to both the United States Trustee and the Court relating to the Bellagio Stock.  [See Docket No. 209, pp. 41, 95-1190.]

24. In paragraph 31 of the October 2011 Declaration Douglass Jennings testified as follows:

> The Bellagio Capital, Inc. transaction was properly documented and information regarding the transaction was provided to the United States Trustee, including the meeting minutes and assignment documents. A copy of the Letter to the United States Trustee and relevant exhibits are attached hereto as Exhibit "G" and incorporated herein by this reference. The Debtor has always been transparent with respect to its disclosures to the Court and its creditors. [See Docket No. 209, p. 37.]

25. The documents referred to by Douglass Jennings in his declaration included purported: (1) Minutes of a Special Meeting of the Directors of Bellagio Capital, Inc., a California Corporation, (2) Assignment of Stock Separate from Certificate, and (3) Assignment (collectively, the "Falsified Minutes and Assignment Documents").  All of the Falsified Minutes and Assignment Documents are dated January 1, 2010 and all are unsigned.  True and correct copies of the Falsified Minutes and Assignment Documents are attached hereto as Exhibit "A."

26. The Falsified Minutes and Assignment Documents purport to evidence a meeting on New Years' Day in 2010 between Douglass Jennings, Peggy Jennings, Timothy Wilson, and Jennifer Wilson. In fact, no such meeting took place.

27.    Commerce Bank obtained a deficiency judgment against Douglass Jennings on January 14, 2011. A true and correct copy of the deficiency judgment is attached hereto as Exhibit "B."

28.    On January 24, 2011, ten days after Commerce Bank obtained its deficiency judgment against Douglass Jennings, and more than one year after the purported January 1, 2010 meeting, Douglass Jennings for the first time presented the Falsified Minutes and Assignment Documents to the president of Bellagio, Timothy Wilson, and asked him to sign the back-dated documents. Mr. Wilson refused to sign them.

29.    On January 24, 2011, Jennings also presented Mr. Wilson with Stock Certificate No. 5, dated January 1, 2010, which purported to represent ownership of the Bellagio Stock by the Children's Trust. On February 3, 2011, Mr. Wilson advised Mr. Jennings that Mr. Wilson refused to sign Stock Certificate No. 5. A true and correct copy of the unsigned Stock Certificate No. 5 is attached hereto as Exhibit "C."

30.    Douglass Jennings thereafter altered Stock Certificate No. 5 by erasing Mr. Wilson's name and inserting his name in its place. He signed the certificate sometime on or after February 3, 2011 and has used it as evidence that the Children's Trust is the owner of the Bellagio Stock. A true and correct copy of the altered Stock Certificate No. 5 is attached hereto as Exhibit "D."

31.    Douglass Jennings is a forger, but he is not a very good one. Bellagio corporate documents created by Douglass Jennings and **signed by both Debtors after January 1, 2010**, list the Jennings Family Trust as the owner of the Bellagio Stock.

32.    The Joint Action by Unanimous Written Consent of the Shareholders and Directors of Bellagio Capital, Inc. dated May 30, 2010 (the "Genuine May 2010 Unanimous Consent") was prepared by Douglass Jennings. The Genuine May 2010 Unanimous Consent was signed by Douglass Jennings, Peggy Jennings, Timothy Wilson, and Jennifer Wilson.  It clearly states that the Jennings Family Trust was the shareholder of Bellagio as of that date. A true and correct copy of the Genuine May 2010 Unanimous Consent is attached hereto as Exhibit "E."

33.    Similarly, the Minutes of the Special Meeting of the Shareholders of Bellagio Capital, Inc., a California Corporation (the "Genuine June 2010 Minutes") were prepared by Douglass Jennings. The Genuine June 2010 Minutes were signed by Douglass Jennings and Timothy Wilson.  The minutes clearly state that the Jennings Family Trust was the shareholder of Bellagio as of that date. A true and correct copy of the Genuine June 2010 Minutes are attached hereto as Exhibit "F."

34.    Douglass Jennings also testified in paragraph 28 of the October 2011 Declaration that the Bellagio Stock was sold to the Children's Trust pursuant to a Stock Purchase Agreement dated January 1, 2010. He further testified that the transaction was evidenced by (1) a Stock Purchase Agreement, (2) a Promissory Note, and (3) a Pledge Agreement (collectively, the "Falsified Purchase Documents"). [See Docket No. 209, p. 36.]

35.     Douglass Jennings presented the Falsified Purchase Documents to the Court in support of his opposition to the motion to appoint a trustee. [See Docket No. 209, p. 96-109.] True and correct copies of the Falsified Purchase Documents are attached hereto as Exhibit "G."

36.    Falsified Purchase Documents are complete fabrications and were produced by Douglass Jennings in order to commit a fraud on the Court.

37.    Mr. Jennings does not have an eye for detail when he fabricates documents. When he fabricated the purported Stock Purchase Agreement Jennings included recitals regarding events which had not occurred yet on January 1, 2010. For example, Section 3.01(f) of the purported Stock Purchase Agreement states "Buyer hereby acknowledges receipt of the statements of income and retained earnings of the Company and a balance sheet of the Company as of December 31, 2009. . . ." However, those financial documents did not exist on January 1, 2010.

38.    Similarly, Section 3.01(n) of the purported Stock Purchase Agreement states: "The Company tax returns for fiscal year 2009 are currently on extension with the federal return due by September 15, 2010." However, the request for extension for Bellagio's 2009 tax return was not filed until March 15, 2010.

39.    Moreover, Section 3.01(e) of the purported Stock Purchase Agreement lists

Douglass Jennings and Timothy Wilson as the only two directors of Bellagio. However, on January 1, 2010, Bellagio had <u>four</u> directors, not two. The number of directors was changed from four to two on May 30, 2010 (five months after the date of the purported Stock Purchase Agreement). See Exhibit "G" hereto.

40.     The purported transfer of the Bellagio Stock by the Debtors to the Children's Trust never took place. The Falsified Minutes and Assignment Documents and the Falsified Purchase Documents were fabricated by Douglass Jennings in a conspiracy to defraud his creditors, the United States Trustee, and the Bankruptcy Court.

41.     Bellagio never received copies or notice of the Falsified Purchase Documents prior to the filing of the Jennings Bankruptcy Case.

42.     Bellagio has never recognized the Children's Trust as having any ownership interest in Bellagio.

43.     The tax returns and corporate records of Bellagio have never recognized the Children's Trust as having any ownership interest in Bellagio, including but not limited to the Bellagio tax returns filed for the years 2010, 2011, and 2012.

44.     On or about March 3, 2011, the Debtors received confirmation on their Bellagio K-1 that the Debtors, not the Children's Trust, were listed as shareholders of Bellagio. The Debtors did not dispute their ownership.

45.     Again, on or about March 8, 2012, the Debtors the Debtors received confirmation on their Bellagio K-1 that the Debtors, not the Children's Trust, were listed as shareholders of Bellagio. The Debtors did not dispute their ownership then either.

**C.  Harm to Bellagio and Bella Lago LLC**

46.     Bellagio is a California corporation. It has two shareholders who each own 1,000 shares.

47.     One shareholder is Pacific Surf Partners, L.P., a California limited partnership. The general partner of Pacific Surf Partners is Sea Castle, LLC. The manager of Sea Castle, LLC is Timothy Wilson.

48.     The other shareholder is the Jennings Family Trust, now the Jennings Bankruptcy

7

Estate.

49.    Bellagio has two directors. Those directors are Timothy Wilson and Douglass Jennings.

50.    Under Bellagio's bylaws, directors are to be elected by the shareholders.

51.    Neither Bellagio nor Pacific Surf Partners recognizes the Children's Trust as a shareholder of Bellagio because to do so would be to participate in a fraud. No meetings of the shareholders of Bellagio have taken place since the Petition Date because there is a dispute between the Trustee, Bellagio and the Children's Trust regarding who is the owner of the Bellagio Stock.

52.    Bellagio called a shareholder meeting between Pacific Surf Partners and the Trustee but the Trustee declined to attend due to the dispute regarding ownership of the Bellagio Stock.

53.    Bellagio is the sole manager of Bella Lago LLC. Bellagio also owns a 55% ownership interest in Bella Lago LLC.

54.    Bella Lago LLC is the owner of 52 undeveloped residential lots with a final map in place located in Chula Vista, California (the "Bella Lago Lots").

55.    Bellagio manages the business of Bella Lago LLC. However, Bellagio is unable to effectively manage Bella Lago LLC and the Bella Lago Lots while the ownership of the Bellagio Stock remains unresolved.

56.    Bellagio and Pacific Surf Partners do not recognize the Children's Trust as a shareholder of Bellagio and believe they would be participating in a fraud if they allow the Children's Trust to participate as a shareholder of Bellagio. However, Bellagio and Pacific Surf Partners also do not recognize Jennings Family Trust as a shareholder because the Trustee owns the Bellagio Stock.

57.    Bellagio and its President, Timothy Wilson, are reluctant to make major decisions for Bellagio, including as to certain actions on behalf of Bella Lago, LLC, without the approval of Bellagio's directors, who are supposed to be elected by Bellagio's shareholders.

58.    The value of the Bella Lago Lots has dropped precipitously in the past year.

59.     The Trustee commissioned an appraisal of the Bella Lago Lots in early 2013. The appraiser opined that the value of the 52 Bella Lago Lots was $7,800,000 as of March 11, 2013.

60.     A year later, the same appraisal firm opined that the 52 Bella Lago Lots were worth $5,200,000 as of March 20, 2014.

61.     The value of the Bella Lago Lots has declined approximately $2,600,000 between March of 2013 and March of 2014.

62.     The value of Bellagio's 55% interest in Bell Lago LLC has declined approximately $1,430,000 during that time period.

63.     Bellagio will suffer irreparable harm if the owner of the Bellagio Stock is not determined promptly.

64.     The value of the Bella Lago Lots is declining. The Bella Lago Lots are currently the only lots in Chula Vista that are available for development. However, many more lots are working their way through the permitting process. As those other lots near the completion of the permitting process, the value of the Bella Lago Lots may drop precipitously.

65.     The declining value of the Bella Lago Lots is harming Bellagio, Pacific Surf Partners, the other investors of Bell Lago LLC, and the Bankruptcy Estate.

## FIRST CAUSE OF ACTION

(Declaratory Relief)

66.     Plaintiff refers to and incorporates herein by reference all the allegations contained in paragraphs 1 through 65, inclusive, as though set forth fully herein.

67.     The determination regarding who is the owner of the Bellagio Stock is a proper matter for declaratory relief.

68.     An actual controversy has arisen and now exists with respect to the ownership of the Bellagio Stock between Plaintiff and the Trustee, on the one hand, and the Children's Trust, on the other.

69.     Plaintiff desires a judicial determination regarding who is the owner of the Bellagio Stock.

70.     Plaintiff is informed and believes that Defendant Children's Trust disputes each of

9

1  Plaintiff's contentions with respect to the ownership of the Bellagio Stock.

2      71.    A judicial declaration is necessary and appropriate at this time under the

3  circumstances in order that Plaintiff and Defendants may ascertain their respective rights with

4  regard to the Bellagio Stock.

5      WHEREFORE, Plaintiff prays for relief on all causes of action as follows:

6      1.    On the First Cause of Action for a judgment and order declaring (1) that the

7  Children's Trust has no ownership interest in the Bellagio Stock, and (2) that the Trustee owns

8  the Bellagio Stock for the benefit of the Debtors' Bankruptcy Estate.

9      2.    For such other and further relief as is just.

10  July 18, 2014                                    VANDERHOFF LAW GROUP

11                                                          /s/ Alan Vanderhoff
                                                    By: _____
12
                                                          Alan Vanderhoff
13                                                  Attorneys for BELLAGIO CAPITAL, INC.

EXHIBIT "A"

MINUTES OF A SPECIAL MEETING

OF THE DIRECTORS OF

BELLAGIO CAPITAL, INC.,

A CALIFORNIA CORPORATION


A Special Meeting of the Directors of BELLAGIO CAPITAL, INC., a California Corporation, was held on the date and at the time and place indicated below:


DATE:          January 1, 2010

TIME:          5:00 p.m.

PLACE:         Office of the Corporation


The Directors of the Corporation were present at the meeting, to wit:

TIMOTHY WATSON WILSON;

JENNIFER STANGL WILSON;

J. DOUGLASS JENNINGS, JR.;

PEGGY L. JENNINGS.


TIMOTHY WATSON WILSON presided at the meeting and J. DOUGLASS JENNINGS, JR. acted as Secretary of the meeting.


**WAIVER OF NOTICE**

It was resolved that by signature to these Minutes notice of

the time and place of the meeting would be waived and the Minutes approved.

## TRANSFER OF BELLAGIO CAPITAL, INC. COMMON SHARES

The Chairman presented to the meeting the fact that J. DOUGLASS JENNINGS, JR. AND PEGGY L. JENNINGS, CO-TRUSTEES OF THE JENNINGS FAMILY TRUST DATED NOVEMBER 14, 1985 have executed a Stock Purchase Agreement entered into this same date of January 1, 2010. Said Stock Purchase Agreement transferred fifty percent (50%) of the total shares of common stock of Bellagio Capital, Inc., resulting in one thousand (1,000) shares of said common stock of Bellagio Capital, Inc. to APRIL M. GIFFIN AND SARAH SUZANNE MURPHY, CO-TRUSTEES OF THE JENNINGS CHILDREN'S TRUST DATED OCTOBER 13, 2009.

The Chairman presented for discussion that the Stock Purchase Agreement provided for payment of Two Hundred Thousand Dollars ($200,000.00) with a partial principal payment in the amount of Twenty Thousand Dollars ($20,000.00) due on or before December 31, 2010. A Promissory Note delineating the principal amount, interest rate, and all other terms has been fully executed by APRIL M. GIFFIN AND SARAH SUZANNE MURPHY in their capacities as CO-TRUSTEES OF THE JENNINGS CHILDREN'S TRUST DATED OCTOBER 13, 2009.

The proposal that all stock currently held by J. DOUGLASS JENNINGS, JR. AND PEGGY L. JENNINGS, CO-TRUSTEES OF THE JENNINGS FAMILY TRUST DATED NOVEMBER 14, 1985 be transferred to APRIL M. GIFFIN AND SARAH SUZANNE MURPHY, CO-TRUSTEES OF THE JENNINGS CHILDREN'S TRUST DATED OCTOBER 13, 2009 was accepted. Therefore,

00106705                                2

after due discussion and upon motion duly made, seconded and unanimously carried, the following Resolution was adopted:

> WHEREAS, the Director believes it to be in the Corporation's best interests to allow the subject shares to be held by APRIL M. GIFFIN AND SARAH SUZANNE MURPHY, CO-TRUSTEES OF THE JENNINGS CHILDREN'S TRUST DATED OCTOBER 13, 2009;
>
> THEREFORE, LET IT BE RESOLVED, that the one hundred (100) shares of corporate stock issued to J. DOUGLASS JENNINGS, JR. AND PEGGY L. JENNINGS, CO-TRUSTEES OF THE JENNINGS FAMILY TRUST DATED NOVEMBER 14, 1985 be transferred to APRIL M. GIFFIN AND SARAH SUZANNE MURPHY, CO-TRUSTEES OF THE JENNINGS CHILDREN'S TRUST DATED OCTOBER 13, 2009, and be accomplished by the cancellation of Share Certificate Number 2 and the issuance of Share Certificate Number 5;
>
> RESOLVED FURTHER, that the Secretary of the Corporation be authorized to take whatever actions are necessary to carry out this Resolution.

**ADJOURNMENT**

There being no further business to come before the Special Meeting, upon motion duly made, seconded and unanimously carried, the Special Meeting was adjourned.

J. DOUGLASS JENNINGS, JR.,
Secretary

00106705                                   3

MINUTES APPROVED:


_____
TIMOTHY WATSON WILSON,
Director


_____
JENNIFER STANGL WILSON,
Director


_____
J. DOUGLASS JENNINGS, JR.,
Director


_____
PEGGY L. JENNINGS,
Director

## ASSIGNMENT OF STOCK
## SEPARATE FROM CERTIFICATE

For consideration in the amount of Two Hundred Thousand Dollars and No Cents ($200,000.00) the undersigned does hereby sell, assign, and transfer to APRIL M. GIFFIN AND SARAH SUZANNE MURPHY, CO-TRUSTEES OF THE JENNINGS CHILDREN'S TRUST DATED OCTOBER 13, 2009, their respective one thousand (1,000) shares of the common stock of Bellagio Capital, Inc., represented by Certificate Number 2, standing in the name of the undersigned on the books of that company.

The undersigned does hereby irrevocably appoint J. DOUGLASS JENNINGS, JR., as their attorney in fact, to transfer the above stock on the books of the company, with full power of substitution in the premises.

DATED:      January 1, 2010

J. DOUGLASS JENNINGS, JR. AND PEGGY L. JENNINGS FAMILY TRUST DATED NOVEMBER 14, 1985.


_____
J. DOUGLASS JENNINGS, JR.,
Co-Trustee


_____
PEGGY L. JENNINGS,
Co-Trustee


00106705                              5

## ASSIGNMENT

We, J. DOUGLASS JENNINGS, JR. AND PEGGY L. JENNINGS, CO-TRUSTEES OF THE JENNINGS FAMILY TRUST DATED NOVEMBER 14, 1985 hereby transfer, assign, and convey all of our rights, titles and interests in and to BELLAGIO CAPITAL, INC., a California Corporation to APRIL M. GIFFIN AND SARAH SUZANNE MURPHY, CO-TRUSTEES OF THE JENNINGS CHILDREN'S TRUST DATED OCTOBER 13, 2009.

We, J. DOUGLASS JENNINGS, JR. AND PEGGY L. JENNINGS, CO-TRUSTEES OF THE JENNINGS FAMILY TRUST DATED NOVEMBER 14, 1985, further represent that such Assignment was made in accordance with all applicable laws and regulations and in all other respects is satisfactory in form and substance to the Board of Directors of said Corporation, said resolution attached hereto.

DATED:     January 1, 2010

J. DOUGLASS JENNINGS, JR. AND PEGGY L. JENNINGS FAMILY TRUST DATED NOVEMBER 14, 1985.


_____
J. DOUGLASS JENNINGS, JR.,
Co-Trustee


_____
PEGGY L. JENNINGS,
Co-Trustee


00106705                          6

EXHIBIT "B"

1  DENNIS F. FABOZZI  (SB #76355)
   EDWARD J. MILLER (SB #244091)
2  Law Offices of Dennis F. Fabozzi
   41955 Fourth Street, Suite 300
3  Temecula, CA  92590
   951/296-1775- Telephone
4  951/296-1776- Facsimile
   2763
5
   Attorneys for Commerce Bank of Temecula Valley
6

F I L E D
Clerk of the Superior Court

JAN 1 4 2011

By: P. DIETRICH, Deputy

7            SUPERIOR COURT OF CALIFORNIA

8         IN AND FOR THE COUNTY OF SAN DIEGO

9              NORTH COUNTY DIVISION

10

11  COMMERCE BANK OF TEMECULA          )   CASE NO.: 37-2010-00051531-CU-
    VALLEY, a California State-Chartered )   BC-NC
12  Bank,                              )
                                       )   *Assigned to Judge William S. Dato*
13            Plaintiff,               )   *Dept. N-31*
                                       )
14  vs.                                )
                                       )   [~~PROPOSED~~] ORDER AFTER
15  HORIZON PROPERTIES, LLC, a         )   HEARING FOR FAIR VALUE
    California limited liability company; )   DETERMINATION AND
16  BELLAGIO CAPITAL, LLC., a          )   DEFICIENCY JUDGMENT
    California Limiited Liability Company; )
17  SCORPION BAY, LLC.; a California    )
    limited liability company; TIMOTHY )   DATE:      January 14, 2011
18  WILSON, an individual; J. DOUGLAS  )   TIME:      1:30 p.m.
    JENNINGS, JR., an individual; PEGGY )   DEPT:      N-31
19  L. JENNINGS, an individual; J.     )
    DOUGLAS JENNINGS, JR. and PEGGY    )
20  L. JENNINGS FAMILY TRUST; and      )
    DOES 1 through 20, inclusive,      )
21                                     )
              Defendants.              )
22  _____ )

23        The Motion for Fair Value Determination and Deficiency Judgment came on for

24  hearing on January 14, 2011, in Department N–31 before The Honorable Timothy M.

25  Casserly.  After consideration and for good cause:

26  ///

27  ///

28  ///

                                        1

EXHIBIT  1 (Pg 1 of 2)                    Order

IT IS HEREBY ORDERED as follows:

Judgment in favor of Plaintiff Commerce Bank of Temecula Valley and as against Horizon Properties, LLC, J. Douglas Jennings, Jr. and the J. Douglas Jennings, Jr. And Peggy L. Jennings Family Trust as follows:

1. The fair market value of the property identified by Assessor's Parcel Numbers 182-190-25, 182-260-13 and 182-270-03 is $492,000.00.

2. The fair market value of the property identified by Assessor's Parcel Number 182-190-19 is $182,000.00.

3. The judgment herein is $680,757.78. The judgment is calculated as follows:

| Total Award of Judgment: | $1,454,757.78 |
| Amount of Settlement Received: | <$ 100,000.00> |
| Fair Value of Property 1: | <$ 492,000.00> |
| Fair Value of Property 2: | <$ 182,000.00> |
| Deficiency Amount: | $ 680,757.78 |

4. The Deficiency Judgment against Horizon Properties, LLC, J. Douglas Jennings, Jr. and the J. Douglas Jennings, Jr. And Peggy L. Jennings Family Trust shall be in the amount of $680,757.78.

Dated: ___JAN 1 4 2011___, 2011

Timothy M. Casserly, Judge
JUDGE OF THE SUPERIOR COURT

Order

Pg 2 of 2

EXHIBIT "C"



NUMBER
5

SHARES

INCORPORATED UNDER THE LAWS OF THE STATE OF CALIFORNIA

**BELLAGIO CAPITAL, INC.**

This Certifies that   APRIL M. GIFFIN AND SARAH SUZANNE MURPHY
CO-TRUSTEES OF THE JENNINGS                *is the owner of*
CHILDREN'S TRUST DATED OCTOBER 13, *fully paid and*

ONE THOUSAND (1,000)

*non-assessable Shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.*

*In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with the Seal of the Corporation.*

*Dated* JANUARY 1, 2010

EXHIBIT "D"



NUMBER
5

SHARES
1,000

INCORPORATED UNDER THE LAWS OF THE STATE OF CALIFORNIA

# BELLAGIO CAPITAL, INC.

The Corporation is authorized to issue 100,000 Common Shares — No Par Value

**This Certifies that** APRIL M. GIFFIN AND SARAH SUZANNE MURPHY
CO-TRUSTEES OF THE JENNINGS *is the owner of*
CHILDREN'S TRUST DATED OCTOBER 13, 2009
ONE THOUSAND (1,000) *fully paid and*
*non-assessable Shares of the above Corporation transferable only on the*
*books of the Corporation by the holder hereof in person or by duly authorized*
*Attorney upon surrender of this Certificate properly endorsed.*

*In Witness Whereof, the said Corporation has caused this Certificate to be signed*
*by its duly authorized officers and to be sealed with the Seal of the Corporation.*

*Dated* JANUARY 1, 2010

DOUGLASS JENNINGS SECRETARY

DOUGLASS JENNINGS, JR. VICE PRESIDENT

EXHIBIT "E"

# JOINT ACTION BY UNANIMOUS
# WRITTEN CONSENT OF THE
# SHAREHOLDERS AND DIRECTORS OF
# BELLAGIO CAPITAL, INC.

DATE:          May 30, 2010

TIME:          5:00 p.m.

PLACE:         Office of the Corporation


The undersigned, being all of the shareholders and all of the directors of Bellagio Capital, Inc., a California Corporation (the "Company"), acting pursuant to authority set forth in the California General Corporation Law and in the Bylaws of the Corporation, hereby adopt the following resolutions by unanimous written consent:

## AMENDMENT TO BYLAWS

The Shareholders of the Corporation deem it to be in the best interest of the Corporation that Article III, Section 2 of the Bylaws of the Company be amended to read as set forth on EXHIBIT A, hereto in order to change the authorized number of directors to two(2);

> THEREFORE, BE IT RESOLVED, that Articles III, Section 2 of the Bylaws of the Corporation be amended to read as set forth on EXHIBIT A hereto;



RESOLVED FURTHER, that the President of the Corporation be, and hereby is, authorized, empowered and directed, for and on behalf of the Company, to execute such documents and to take such steps as such officer deems necessary or appropriate to effectuate the purposes of the foregoing resolution.

### ELECTION OF DIRECTORS AND OFFICERS

The Directors of the Corporation deem it to be in the best interest of the Corporation to, concurrently with the foregoing amendment to the Bylaws, change the authorized number of directors to two (2), the directors of the Corporation shall be J. DOUGLASS JENNINGS, JR. AND TIMOTHY WATSON WILSON;

WHEREAS, it is deemed to be in the best interest of the Corporation and its shareholders that the following persons be elected to the offices indicated as follows:

| PRESIDENT: | TIMOTHY WATSON WILSON |
| VICE PRESIDENT: | J. DOUGLASS JENNINGS, JR. |
| SECRETARY: | J. DOUGLASS JENNINGS, JR. |
| CHIEF FINANCIAL OFFICER: | TIMOTHY WATSON WILSON |

NOW, THEREFORE, BE IT RESOLVED, that the foregoing persons are hereby elected as the directors and officers of the Company, in each case effective on the date hereof;

RESOLVED FURTHER, that the President of the Company be, and hereby is, authorized, empowered and directed, for and on behalf of the Corporation to execute such documents and to take such steps (including the filing of an updated Statement of Information) as such officer deems necessary or appropriate to effectuate the purposes of the foregoing resolution.

### RATIFICATION AND APPROVAL OF RELATED PARTY TRANSACTIONS

The Chairman then reported to the meeting the other activities of the Corporation's Officers and proposed that the Directors ratify those actions. Upon motion duly made, seconded and unanimously carried, the following Resolution was adopted:

WHEREAS, it is deemed to be in the best interest of the Corporation and its shareholders that the undersigned ratify and approve the Five Hundred Thousand Dollars ($500,000.00) loan to the Corporation by The Wilson Family Trust, which loan is secured by the "economic interest" of the Corporation in Bella Lago, LLC, a California Limited Liability Company;

WHEREAS, it is also deemed to be in the best interest of the Corporation and its shareholders to authorize the assignment by the Corporation to Pacific Surf Partners, L.P., a California Limited Partnership, of the compensation payable to the Corporation under Section 6.1.4 of the Operating Agreement of Bella lago, LLC, a California Limited Liability Company (of which the Corporation is Manager), pursuant to the Assignment of Manager Compensation in the form of that attached hereto as EXHIBIT B;

NOW THEREFORE BE IT RESOLVED, that pursuant to and in accordance with Section 310 of the California General Corporation Law, the material facts as to the loan transaction and the assignment of compensation are known by the undersigned; the undersigned hereby ratify and approve in good faith the transactions effected pursuant to the Loan Documents and the Assignment of Manager Compensation; and the undersigned agree that such transactions are just and reasonable to the Company at this time;

RESOLVED FURTHER, that the President or Vice president of the Company be, and each hereby is, authorized empowered and directed, for and on behalf of the Corporation, to execute such documents and to take such steps as such officer deems necessary or appropriate to effectuate the purposes of the foregoing resolution.

**THIS PORTION OF THE PAGE INTENTIONALLY LEFT BLANK.**

**SIGNATURE PAGE TO FOLLOW.**

Actions taken by this Written Consent shall have the same forth and effect as though taken at a meeting duly noticed and held. A copy of this Written Consent shall be filed with the corporate records of the Corporation and made a part thereof.

Dated as of:    May 30, 2010

**SHAREHOLDERS**

Pacific Surf Partners, L.P.,
A California Limited Partnership

By:    Sea Castle, LLC,
       a California Limited Liability Company
Its: General Partner

By:  _____
     Timothy Watson Wilson
Its: Manager

J. DOUGLASS JENNINGS, JR., CO-TRUSTEE
U.T.D. NOVEMBER 14, 1985

_____
J. DOUGLASS JENNINGS, JR.
Co-Trustee

**DIRECTORS**

_____
TIMOTHY WATSON WILSON

_____
JENNIFER STANGL WILSON

_____
J. DOUGLASS JENNINGS, JR.

_____
PEGGY L. JENNINGS

## EXHIBIT A

## ARTICLES III
### DIRECTORS

Section 2.   Qualifications and Number of Directors

The authorized number of Directors shall be two (2) until changed
by a duly adopted amendment to this bylaw adopted by the vote or
written consent of holders of a majority of the outstanding shares
entitled to vote; provided, however, that (I) before shares are
issued, the number may be one (1), (ii) before shares are issued,
the number may be two (2), (iii) so long as the corporation has
only one (1) shareholder, the number may be one (1), (iv) so long
as the corporation has only one (1) shareholder, the number may be
two (2), and (iv) so long as the corporation has only two (2)
shareholders, the number may be two (2).   After the issuance of
shares, a bylaw specifying or changing a fixed number of Directors
or the maximum or minimum number or changing from a fixed to a
variable board or vice versa may only be adopted by approval of the
outstanding shares; provided, however, that a bylaw or amendment of
the articles reducing the fixed number or the minimum number of
Directors to a number less than five (5) cannot be adopted if the
votes cast against its adoption at a meeting or the shares not
consenting in the case of action by written consent are equal to
more than sixteen and two-thirds percent (16-2/3%) of the
outstanding shares entitled to vote.

## EXHIBIT B

### ASSIGNMENT OF MANAGER COMPENSATION

This Assignment of Manager Compensation is entered into as of the 15th day of May, 2010 between Bellagio Capital, Inc., a California corporation ("Assignor") and Pacific Surf Partners, L.P., a California limited partnership ("Assignee"), with reference to the following facts:

A.    Assignor is the Manager of Bella Lago, LLC, a California limited liability company ("BL") and, as such, is entitled to certain payments (the "Compensation") pursuant to Section 6.1.4 of that certain Operating Agreement of BL, dated as of July 1, 1997 (the "Operating Agreement");

B.    Assignee is a 50% shareholder in Assignor and acts on behalf of Assignor in connection with BL; and

C.    Accordingly, Assignor has agreed to assign to Assignee all of Assignor's right, title and interest in and to the Compensation earned from and after January 1, 2005 (the "Assigned Compensation").

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, the parties hereto hereby agree as follows:

1.    Assignor hereby sells, assigns, transfers, conveys and delivers to Assignee all of Assignor's right, title and interest in and to the Assigned Compensation.

2.    Assignor agrees that an executed copy of this Assignment shall constitute its direction and instruction to BL to pay the Assigned Compensation directly to Assignee and, in any event, if Assignor nonetheless receives any such Assigned Compensation, it shall hold the same in trust for Assignee and pay over the same to Assignee in the form received, with any appropriate endorsements.

3.    This Assignment shall be governed by and construed in accordance with the laws of the State of California.



4.   In the event of any action or proceeding regarding this Assignment, the prevailing party shall be entitled to an award of its attorneys' fees and costs, in addition to any other relief to which it may be entitled.

IN WITNESS WHEREOF, the parties hereto have executed this Assignment as of the date first above written.

**ASSIGNOR**

Bellagio Capital, Inc.,
A California Corporation

By: _____
    J. Douglass Jennings, Jr.


**ASSIGNEE**

Pacific Surf Partners, L.P.,
A California Limited Partnership

By:  Sea Castle, LLC,
     A California Limited Liability Company
Its: General Partner

By: _____
    Timothy Wilson
Its: Manager

2

EXHIBIT "F"

# MINUTES OF THE SPECIAL MEETING
## OF THE SHAREHOLDERS OF
### BELLAGIO CAPITAL, INC.,
### A CALIFORNIA CORPORATION

The Special Meeting of the Shareholders of BELLAGIO CAPITAL, INC., a California Corporation, was held on the date and at the time and place indicated below:

DATE:    June 25, 2010

TIME:    4:00 p.m.

PLACE:    Office of the Corporation

The Shareholders of the Corporation were present at the meeting, to wit:

> PACIFIC SURF PARTNERS, L.P., A CALIFORNIA LIMITED PARTNERSHIP, through Sea Castle, LLC, a Nevada Limited Liability Company its General Partner represented by Timothy Watson Wilson, Manager; and
>
> J. DOUGLASS JENNINGS, JR. , CO-TRUSTEE U.T.D. NOVEMBER 14, 1985.

TIMOTHY WATSON WILSON presided at the meeting and J. DOUGLASS JENNINGS, JR. acted as Secretary of the meeting.

## WAIVER OF NOTICE

It was resolved that by signature to these Minutes notice of time and place of meeting would be waived and the Minutes approved.

00088490

finished lots from Bella lago, LLC.   However, no consideration shall pass nor will our option be enforceable until certain contingencies are resolved.  In the original agreement, Bella lago, LLC had until April 15, 2010, to satisfy Shea's concerns with the project but we have executed an extension of that deadline to July 15, 2010.

The Chairman further reported to the meeting that the City of Chula Vista has issued a statement to K. Hovnanian Homes giving them until July 1, 2010, to complete the loop water improvements because K. Hovnanian sold homes without adequate fire flows.

The Chairman also reported that the main issue is that there are fourteen (14) homes that are not up to code that have been sold by K. Hovnanian, which makes K. Hovnanian responsible for bringing those homes up to code and building the improvements.

**IRS**

The Chairman then reported to the meeting the current status of the IRS Audit of Bellagio Capital, Inc.  Bella Lago, LLC has not been audited, but the IRS may require possible amendments to prior year's tax returns.

**CAPITAL REQUIREMENTS**

The Chairman reported to the meeting that Bella Lago, LLC will require a large amount of operating capital to bridge the cash flow requirements until the option with Shea Homes is consummated.  The Chairman indicated it may take until the 1st or 2nd quarter of 2012 until cash flow resumes.

**ADJOURNMENT**

There being no further business to come before the meeting, upon motion duly made, seconded and unanimously carried, the meeting was adjourned.

_____
J. DOUGLASS JENNINGS, JR.,
Secretary

MINUTES APPROVED:

SEA CASTLE, LLC,
A NEVADA LIMITED LIABILITY COMPANY

_____
TIMOTHY WILSON,
Managing Member

J. DOUGLASS JENNINGS, JR., CO-TRUSTEE
U.T.D. NOVEMBER 14, 1985

_____
J. DOUGLASS JENNINGS, JR.,
Co-Trustee

00086490.

3

**MINUTES OF SPECIAL MEETING**

**OF THE DIRECTORS OF**

**BELLAGIO CAPITAL, INC.,**

**A CALIFORNIA CORPORATION**

This special meeting of the Directors of BELLAGIO CAPITAL, INC., a California Corporation, was held on the date and at the time and place indicated below:

DATE:      June 25, 2010

TIME:      4:30 p.m.

PLACE:     Office of the Corporation

The Directors of the Corporation were present at the meeting, to wit:

TIMOTHY WATSON WILSON; and
J. DOUGLASS JENNINGS, JR.

TIMOTHY WATSON WILSON presided at the meeting and J. DOUGLASS JENNINGS, JR. acted as Secretary of the meeting.

**WAIVER OF NOTICE**

It was resolved that by signature to these Minutes notice of time and place of meeting would be waived and the Minutes approved.

**2010 1ST QUARTER UPDATE**

The Chairman reported to the meeting that Shea Homes has executed an Option to Purchase forty (40) ungated, partially finished lots from Bella lago, LLC. However, no consideration shall pass nor will our option be enforceable until certain contingencies are resolved. In the original agreement, Bella lago,

00088490

4

LLC had until April 15, 2010, to satisfy Shea's concerns with the project but we have executed an extension of that deadline to July 15, 2010.

The Chairman further reported to the meeting that the City of Chula Vista has issued a statement to K. Hovnanian Homes giving them until July 1, 2010, to complete the loop water improvements because K. Hovnanian sold homes without adequate fire flows.

The Chairman also reported that the main issue is that there are fourteen (14) homes that are not up to code that have been sold by K. Hovnanian, which makes K. Hovnanian responsible for bringing those homes up to code and building the improvements.

**IRS**

The Chairman then reported to the meeting the current status of the IRS Audit of Bellagio Capital, Inc. Bella Lago, LLC has not been audited, but the IRS may require possible amendments to prior year's tax returns.

**CAPITAL REQUIREMENTS**

The Chairman reported to the meeting that Bella Lago, LLC will require a large amount of operating capital to bridge the cash flow requirements until the option with Shea Homes is consummated. The Chairman indicated it may take until the 1st or 2nd quarter of 2012 until cash flow resumes.

## ADJOURNMENT

There being no further business to come before the meeting, upon motion duly made, seconded and unanimously carried, the meeting was adjourned.

J. DOUGLASS JENNINGS, JR.,
Secretary

MINUTES APPROVED:

TIMOTHY WATSON WILSON,
Director

J. DOUGLASS JENNINGS, JR.,
Director

00088490

EXHIBIT "G"

**PROMISSORY NOTE**

$200,000.00                San Diego, California                January 1, 2010

On or before December 31, 2014, for value received, the undersigned (the "Borrower") promises to pay to J. DOUGLASS JENNINGS, JR. AND PEGGY L. JENNINGS, CO-TRUSTEES OF THE JENNINGS FAMILY TRUST, DATED NOVEMBER 14, 1985 (the "Holder"), or order, at c/o J. Douglass Jennings, Jr., A Professional Corporation, 9171 Towne Centre Drive, Suite 350, San Diego, California 92122-6214, or any other place designated in a writing submitted by Holder to Borrower, the principal sum of Two Hundred Thousand Dollars ($200,000.00) plus interest on the unpaid balance according to the terms contained in this Promissory Note.

Interest on the unpaid balance of this Promissory Note shall be computed at the rate of three percent (3.0%) simple interest computed on an annual basis until the principal balance of this Promissory Note and all accrued interest on this Promissory Note have been paid in full. This Promissory Note may be prepaid without notice to Holder and without penalty.

Borrower agrees to remit a partial principal payment in the amount of Twenty Thousand Dollars ($20,000.00) on or before December 31, 2010.

Each payment hereunder shall first be credited to interest. The remaining balance shall then be credited to reduce the outstanding balance of principal.

Payments of principal and interest are payable in lawful money of the United States.

Whether or not suit is filed, Borrower agrees to pay all reasonable attorneys' fees, costs of collection, costs and expenses incurred by Holder in connection with the enforcement or collection of this Note. Borrower further agrees to pay all costs of suit and the sum adjudged as attorneys' fees in any action to enforce payment of this Note or any part of it.

This Note shall bind the successors and heirs of the Borrower, and inure to the beneficiaries and heirs of the Holder.

BORROWER

JENNINGS CHILDREN'S TRUST,
DATED OCTOBER 13, 2009

_____
APRIL M. GIFFIN,
CO-TRUSTEE

_____
SARAH SUZANNE MURPHY,
CO-TRUSTEE

00104039

# PLEDGE AGREEMENT

This Pledge Agreement ("Agreement") is made and entered into as of January 1, 2010 by and between APRIL M. GIFFIN AND SARAH SUZANNE MURPHY, CO-TRUSTEES OF THE JENNINGS CHILDREN'S TRUST, DATED OCTOBER 13, 2009 ("Pledgor") and J. DOUGLASS JENNINGS, JR. AND PEGGY L. JENNINGS, CO-TRUSTEES OF THE JENNINGS FAMILY TRUST, DATED NOVEMBER 14, 1985 ("Pledgee") with reference to the following facts:

## RECITALS

At the time of the execution of this Pledge Agreement, the Pledgor promised to pay Pledgee the sum of Two Hundred Thousand Dollars ($200,000.00) pursuant to that certain Stock Purchase Agreement and Promissory Note entered into by and between the Pledgor and Pledgee, which Agreements are dated January 1, 2010.

The purchase price of Two Hundred Thousand Dollars ($200,000.00) represents the amount paid for the acquisition of one thousand (1,000) shares of Bellagio Capital, Inc. common stock (the "Pledge Shares") previously owned by Pledgee in said California corporation. The before-mentioned one thousand (1,000) shares of common stock of Bellagio Capital, Inc. are the subject of this Pledge Agreement.

## PLEDGE

Now, therefore, the parties hereto agree as follows:

1.  <u>Security</u>.  As security for all of Pledgor's obligations and liabilities to Pledgee, whether now existing or hereafter arising under this Agreement, the Promissory Note and the Stock Purchase Agreement of even date herewith, Pledgor herein assigns as security and pledges to Pledgee the Pledged Shares and grants Pledgee a security interest in Pledgor's right, title and interest in and to the Pledged Shares and any distributions thereon, and the proceeds (from disposition or otherwise) thereof (collectively the "Collateral").  Pledgor agrees to take such additional actions as may be necessary or advisable at the reasonable request of Pledgee to perfect and continue Pledgee's security interest in the Collateral.

## Pledgeholder

2.  <u>Appointment of Pledgeholder</u>.  Pledgee hereby appoints the Law Office of J. Douglass Jennings, Jr., A Professional Corporation, or its designee, as "Pledgeholder," to accept and hold the Collateral on their behalf.  To assure Pledgor's ability to perform Pledgor's obligations under this Agreement, Pledgor will, concurrently with the delivery of this Agreement, deliver the stock certificate(s) representing the Pledged Shares, together with a duly executed blank Assignment Separate from Certificate for such certificate(s), to Pledgeholder, such documents to be held in pledge.

00104043                                    1

3.   <u>Duties After an Event of Default</u>. Pledgeholder shall have no duty to determine the existence of an Event of Default, but may, without any liability whatsoever, rely upon the written notice of Pledgee that an Event of Default has occurred. If, following an Event of Default, Pledgee shall elect to exercise its right to realize on the Pledged Shares, Pledgeholder shall, upon the receipt of written notice from Pledgee deliver the Collateral to Pledgee.

4.   <u>Return of Collateral</u>. Upon Pledgor's satisfaction of the obligations, Pledgee shall instruct Pledgeholder to return to Pledgor all Collateral, if any, then in Pledgeholder's possession.

## Dividends

5.   During the term of this pledge, all dividends and other amounts received by the Pledgor as a result of the Pledgor's record ownership of the Pledged Shares shall be payable to Pledgee.

## Voting Rights

6.   During the term of this pledge, and as long as the Pledgor is not in default in the performance of any of the terms of this Agreement, the Promissory Note or the Stock Purchase Agreement, the Pledgor shall have the right to vote the Pledged Shares on all corporate questions.

## Representations

7.   The Pledgor warrants and represents that there are no restrictions on the transfer of any of the Pledged Shares, other than may appear on the face of the certificates, and that the Pledgor has the right to transfer the shares free of any encumbrances and without obtaining the consents of any other shareholders.

## Adjustments

8.   In the event that, during the term of this pledge, any share dividend, reclassification, readjustment, or other change is declared or made in the capital structure of the company that has issued the Pledged Shares, all new, substituted, and additional shares or other securities issued by reason of any change shall be held by J. Douglass Jennings, Jr., A Professional Corporation, in the same manner as the shares originally pledged under this Agreement.

## Warrants and Rights

9.   In the event that during the term of this pledge, subscription warrants or any other rights or options shall be issued in connection with the Pledged Shares, the warrants, rights, and options shall be immediately assigned by the Pledgor to the Pledgee, and if exercised by the Pledgor, all new shares or other securities so acquired by the Pledgor shall be immediately assigned to the Pledgee to be held in the same manner as the shares originally pledged under this Agreement.

00104043                                                        2

### Payment of Loan

10.    Upon the full payment by Pledgor to Pledgee of amounts owed under the Promissory Note, and so long as Pledgor is not in default under the Stock Purchase Agreement, the Pledgee shall instruct Pledgeholder to deliver the Collateral to Pledgor.

### Default

11.    In the event that the Pledgor defaults in the performance of any of the terms of this Agreement, the Promissory Note or the Stock Purchase Agreement, the Pledgee shall have the rights and remedies provided in the California Uniform Commercial Code.  In this connection, the Pledgee may, on five (5) days' written notice to the Pledgor, and without liability for any diminution in price that may have occurred, require the immediate sale of the Pledged Shares in the manner and for the price that the Pledgee may determine, which determination will be made by a qualified business appraiser of his choosing if the parties cannot agree.

This Pledge Agreement is dated and effective this 1st day of January, 2010.

PLEDGOR                              PLEDGEE

JENNINGS CHILDREN'S TRUST,            JENNINGS FAMILY TRUST,
DATED OCTOBER 13, 2009               DATED NOVEMBER 14, 1985


_____              _____
APRIL M. GIFFIN,                     J. DOUGLASS JENNINGS, JR.,
CO-TRUSTEE                           CO-TRUSTEE


_____              _____
SARAH SUZANNE MURPHY,                PEGGY L. JENNINGS,
CO-TRUSTEE                           CO-TRUSTEE

00104043                             3

# STOCK PURCHASE AGREEMENT

This Stock Purchase Agreement ("Agreement") is made and entered into as of January 1, 2010 by and between APRIL M. GIFFIN AND SARAH SUZANNE MURPHY, CO-TRUSTEES OF THE JENNINGS CHILDREN'S TRUST, DATED OCTOBER 13, 2009, hereinafter referred to as "Buyer," and J. DOUGLASS JENNINGS, JR. AND PEGGY L. JENNINGS, CO-TRUSTEES OF THE JENNINGS FAMILY TRUST, DATED NOVEMBER 14, 1985, hereinafter referred to as "Seller," relative to purchase and sale of common stock of Bellagio Capital, Inc., a California corporation, hereinafter referred to as "Company," which Stock Purchase Agreement is based upon the following facts:

## RECITALS

WHEREAS, there are two thousand (i.e., 2,000) total outstanding common shares of the Company, which shares constitute all of the issued and outstanding capital stock of the Company;

WHEREAS, fifty percent (i.e., 50.0%) of all outstanding shares (i.e., one thousand (1,000) shares) are owned by Seller;

WHEREAS, Seller is desirous of selling to Buyer, and Buyer is desirous of purchasing from Seller, all of Seller's shares of stock of Company upon the terms and conditions and for the consideration hereinafter set forth; and

WHEREAS, Seller and Buyer desire to enter into this Agreement which is intended to supersede all prior agreements and understandings between them for the purchase by Buyer of all of Seller's shares.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree as follows:

### ARTICLE 1.  PURCHASE

Section 1.01.  For the purchase price and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and on the terms and subject to the conditions set forth in this Agreement, Seller hereby sells, assigns, transfers and delivers to Buyer, and Buyer hereby purchases from Seller, all of their right, title and interest in and to the shares now owned by Seller.  Said shares shall be delivered to Buyer upon execution of this Agreement and all related documents.

### ARTICLE 2.  PURCHASE PRICE AND TERMS

Section 2.01.  The purchase price to be paid by Buyer to Seller for the purchase of the shares is Two Hundred Thousand Dollars ($200,000.00). Buyer hereby delivers to Seller a Promissory Note of this date with a corresponding Pledge Agreement to secure Buyer's performance hereunder.

Section 2.02.  Buyer hereby promises to pay three percent (i.e., 3.0%) interest on the unpaid balance until final payment of the purchase

00104058                                   1

price.

Section 2.03. Buyer agrees to remit ten percent (i.e., 10.0%) of the purchase price (i.e., Twenty Thousand Dollars ($20,000.00)) to Seller not later than December 31, 2010.

Section 2.04. Buyer agrees to remit the entire remaining balance of One Hundred Eighty Thousand Dollars ($180,000.00) on or before December 31, 2014.

Section 2.05. Buyer agrees not to sell, encumber or hypothecate this Promissory Note.

Section 2.06. Buyer hereby acknowledges the Promissory Note of this date and further acknowledges the Pledge Agreement also entered into this date, which documents constitute material consideration as part of this Purchase Agreement.

## ARTICLE 3. WARRANTIES OF SELLER

Section 3.01. Seller hereby warrants, represents and covenants to Buyer, and this Agreement is made in reliance on the following terms, each of which is deemed to be a separate covenant, representation and warranty:

### Ownership of Stock

(a) Seller owned, beneficially and of record, free and clear of all liens, charges, claims, equities, restrictions or encumbrances, fifty percent (i.e., 50.0%) of the Company shares. They have the full right, power and authority to sell, transfer and deliver to Buyer the shares, in accordance with this Agreement, free and clear of all liens, charges, claims, equities, restrictions and encumbrances. The sale by Seller of the shares does not constitute a breach or violation of, or default under, any will, deed of trust, agreement or other instrument by which Seller is bound.

### Liens Created by Sale

(b) The execution and carrying out of the provisions of this Agreement and compliance with the provisions hereof by the Seller, will not violate any provision of law and will not conflict with or result in any breach of any of the terms, conditions or provisions of, or constitute a default under, or result in the creation of, any lien, charge or encumbrance upon any of the properties or assets of the Company pursuant to the Articles of Incorporation, Bylaws, or any indenture, mortgage, deed of trust, agreement or other instrument to which the Company is a party or by which it is bound or affected.

### Duly Organized

(c) Company is a corporation duly organized, validly existing, and in good standing under the Laws of the State of California and has its principal place of business at 9171 Towne Centre Drive, Suite 350,

00104058                                    2

San Diego, California 92122-6214. A copy of the Articles of Incorporation and all amendments thereto, certified by the Secretary of State of the State of California, and a copy of the Bylaws, certified by the Secretary of the Company, have been delivered to the Buyer and are complete and correct as of the date hereof.

### Authorized Capital

(d)   Company has an authorized capital of ten thousand (i.e., 10,000) shares of common stock, of which two thousand (i.e., 2000) shares are validly issued and outstanding, fully paid and non-assessable. There are no outstanding stock options or warrants with respect to, or privileges or rights to purchase or subscribe for, any capital stock of Company, obligations or securities issued by Company convertible into shares of capital stock of Company, agreements provided for or relating to any options, warrants, purchase rights, privileges, convertible obligations, or securities to which the Company is a party, or any agreements by Company to issues, sell or acquire any of its capital stock.

### Officers and Directors

(e)   The following constitute the present Officers and Directors of the Company:

| | |
|---|---|
| Timothy W. Wilson | President |
| J. Douglass Jennings, Jr. | Secretary |
| Timothy W. Wilson | Chief Financial Officer |

### Financial Statements

(f)   Buyer hereby acknowledges receipt of the statements of income and retained earnings of the Company and a balance sheet of the Company as of December 31, 2009, hereinafter referred to respectively as the "balance sheet" and the "date of the balance sheet." Buyer and Seller waive the requirement that the financial statements be certified by independent Certified Public Accountants. Buyer accepts that all such financial statements are correct and complete, have been prepared in accordance with generally accepted principles of accounting consistently applied throughout the periods involved, and present fairly the financial condition and the results of operation of the Company.

### Statement

(g)   Seller has delivered to the Buyer a true and complete list, as of the date hereof and certified by the Company's Treasurer, showing:

(i)   The names of all persons who are employed by the Company;

(ii)   The name of each bank in which the Company has an account or safe deposit box, and the names of all persons authorized to draw thereon or to have access thereto; and

(iii)   The names of all persons, if any, holding tax or other powers of attorney from the Company and a summary statement of the terms

00104058

3

thereof.

## Undisclosed Liabilities

(h)    Except as, and to the extent reflected or reserved against, in the balance sheet, the Company, as of the date of the balance sheet, had no liabilities of any nature, whether accrued, absolute, contingent or otherwise, and whether due or to become due, known or unknown, including without limitation tax liabilities due or to become due, and incurred in respect of or measured by the Company's income for any period up to such date, or arising out of transactions entered into, or any state of facts existing prior thereto.

## Acts by Company

(i)    Since December 31, 2009, the Company has not:

(i)    Incurred any obligation or liability, absolute or contingent, known or unknown, except current liabilities incurred in the ordinary course of business;

(ii)    Discharged or satisfied any lien or encumbrance, or paid any obligation or liability, absolute or contingent, other than current liabilities shown on the balance sheet, and current liabilities incurred since such date in the ordinary course of business;

(iii)    Declared or paid any dividends, made any payment or distribution of any kind to shareholders, or purchased or redeemed or otherwise acquired any shares of capital stock;

(iv)    Mortgaged, pledged or subjected to lien, charge or other encumbrance any of its assets, tangible or intangible;

(v)    Sold or transferred any of its tangible assets, or cancelled any debts or claims, except in the ordinary course of business;

(vi)    Sold, assigned, transferred or granted licenses or rights in any patents, trademarks, trade names, copyrights or other intangible assets;

(vii)    Engaged in any transactions affecting its business or properties not in the ordinary course of business, or suffered any extraordinary losses or waived any rights of substantial value;

(viii)    Made or authorized any change in its outstanding stock, or in its Certificate of Incorporation or Bylaws;

(ix)    Granted or agreed to grant any increase in compensation to, or paid or agreed to pay any bonus to, or made any similar arrangement with any of its directors, officers, employees or agents;

(x)    Suffered any damage, destruction or loss (whether or not covered by insurance) materially and adversely affecting its properties or business, or of any item carried in its property account at more than One Thousand Dollars (i.e., $1,000.00); and

00104058                                      4

(xi)    Experienced any labor trouble, or any event or condition of any character, materially and adversely affecting its business or properties.

### Change in Business

(j)   Since December 31, 2009, there have been no material changes in the assets, liabilities, business or condition of the Company other than changes in the ordinary course of business, which changes have not adversely affected its business, properties, prospects or condition.

### Contracts

(k)   Company is in full compliance with all contracts and said contracts are (i) current, valid and in full force and effect, (ii) not modified, and (iii) enforceable in accordance with their terms.

### Obligations

(l)   The Company has performed all obligations required to be performed by it to date, and is not in default under any contract, agreement, lease, commitment, indenture, mortgage, deed of trust or other document to which it is a party.

### Warranty of Product

(m)   The Company has not made or given any warranty or guarantee with respect to its products outside the ordinary course of business.

### Taxes

(n)   The Company has filed all federal and state tax returns which are required to be filed, and has paid all taxes which have become due pursuant to such returns or pursuant to any assessment received by the Company.  The Company tax returns for fiscal year 2009 are currently on extension with the federal return due by September 15, 2010.  The amounts set up as a provision for taxes on the balance sheet are sufficient for the payment of all accrued and unpaid, federal, state, county and local taxes of the Company for the period ending ons aid date, and for all fiscal years prior thereto.  The Seller does not have any knowledge of any tax deficiency proposed or threatened against the Company.

### Restrictions on Operations

(o)   The Company is not a party to any contract or agreement, or subject to any charter or other corporate restriction, which materially and adversely affects its business, property, assets, operations or conditions, financial or otherwise.

### Compliance with Laws

(p)   The Company has complied with, and is complying with, all applicable laws, orders, rules and regulations promulgated by any federal, state, municipal or other governmental authority relating to the operation and conduct of the property and business of the Company, and there are no material violations of any such law, order, rule or regulation existing or threatened.  The Company has not received any

notices of violation of any applicable zoning regulation or order, or other law, order, regulation or requirement relating to the operation of its business or to its assets.

### Litigation

(q) There are no actions, suits, claims, proceedings, investigations or litigation pending, or, to the knowledge of Seller, threatened against or affecting the Company, at law or in equity or admiralty, or before any federal, state, municipal or other governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign. The Company is not in default with respect to any order, writ, injunction or decree of any court or federal, state, municipal or other governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign.

### Title to Assets

(r) The has good and sufficient title in and to all of the assets listed on the balance sheet or acquired by it after such date, other than inventories sold or otherwise disposed of in the ordinary course of business subsequent to such date; and such assets are in each case free and clear of all mortgages, liens, charges, encumbrances, equities, pledges, conditional sales agreements, or claims of any nature whatsoever, except as stated in the balance sheet.

### Condition of Assets

(s) The assets of the Company are in good operating condition and repair, and conform with all applicable ordinances regulations, zoning, and other laws. Finished goods are up to normal commercial standards.

### Accounts Receivable

(t) All accounts receivable reflected in the balance sheet are current and collectible, except to the extent that they have been collected since the date of the balance sheet. All accounts receivable arising since the date of the balance sheet, to the extent remaining unpaid as of the date hereof, are current and collectible, except to the extent of a reservation for bad debts.

### Insurance

(u) Buyer has been provided with a list and brief description of all policies of fire, liability and other forms of insurance held by the Company. Such policies are in amounts deemed by the management of the Company to be sufficient. All premiums for any such insurance are current and have been paid when due. No notice of cancellation of any such policy has been received by the Company.

00104058                                    6

## Patents and Trademarks, if Applicable

(v)  If any such exist, Buyer has been provided with a list and brief description of all patents, patent applications, trademarks, trade names and copyrights used, owned by, or registered in the name of the Company or in which the Company has any rights; all such patents, patent applications, trademarks, trade names and copyrights are believed to be valid and in good standing, and are not involved in any interference, opposition, or cancellation proceedings.  The Company is not a licensor or licensee with respect to any patents, trademarks, trade names, copyrights or applications therefor. The Company owns or possesses adequate licenses or other rights to use all patents, trademarks, trade names, processes and copyrights necessary to conduct its business as now operated, and within one (i.e., 1) year immediately past, has not received any notice of conflict with the asserted rights of others, which, if unsuccessfully defended, would have a material adverse effect upon its business. Company has the right to conduct the business which it now conducts without any limitations or restrictions of any kind, and to the best of the knowledge of Seller, the products manufactured and sold by the Company may continue to be manufactured and sold by the Company without infringing upon or violating any patents, patent applications, trademarks, trade names, copyrights or processes of others.

### Disclosures

(w)  No representation or warranty contained herein, and no statement made in any certificate or schedule furnished in connection with or attached to this Agreement, contains any untrue statement of a material fact or omits to state any material fact necessary to make any such representation, warranty or statement not misleading to a prospective purchaser of the capital stock of Company.


## ARTICLE 4.  WARRANTIES OF BUYER

Section 4.01.  Buyer hereby warrants, represents, and covenants to Seller, and this Agreement is made in reliance on the following, each of which is deemed to be a separate covenant, representation, and warranty:

(a) That this Agreement constitutes the legal, valid, and binding obligation of Buyer, enforceable against Buyer in accordance with its terms.  Buyer has the absolute and unrestricted right power, and authority to execute and deliver this Agreement and to perform their obligations under this Agreement; and

(b) That they are Co-Trustees of a Trust purchasing for its own accord and has or will have sufficient funds to satisfy the purchase price of Two Hundred Thousand Dollars (i.e., $200,000.00).

## ARTICLE 5. CLOSING DATE AND SURVIVAL OF WARRANTIES; INDEMNIFICATION

### Time of Closing

Section 5.01. The purchase and sale described in this Agreement

shall be consummated, unless delayed to another date by agreement of the parties in writing, as of January 1, 2010 (also referred to herein as the "Execution Date").

### Obligations at Closing

Section 5.02. On the closing date, or on such other date as consummation of the purchase and sale of shares described in this may be delayed by agreement of the parties in writing:

(a) Buyer shall deliver to Seller or their agent or agents all instruments, properly executed by Buyer, required to evidence Buyer's obligation to pay the purchase price of Seller's shares; and

(b) Seller shall deliver to Buyer a share certificate representing the fifty percent (i.e., 50.0%) of the shares in the Company duly endorsed for immediate transfer to Buyer.

### Survival of Warranties

Section 5.03. The warranties, representations, and covenants of each of the parties to this agreement, Buyer and Seller, shall survive the execution of this Agreement and the consummation of the purchase and sale herein described.

### Indemnification by Buyer

Section 5.04. Buyer shall and hereby does indemnify and hold harmless Seller, and shall pay to Seller the amount of any damages incurred or arising, directly or indirectly, from or in connection with (a) any breach of any representation or warranty made by Buyer in this Agreement or in any certificate delivered by Buyer pursuant to this Agreement, (b) any breach by Buyer of any covenant or obligation of Buyer in this Agreement or related transaction documents, or (c) any claim by any person for brokerage or finder's fees or commissions or similar payments based upon any agreement or understanding alleged to have been made by such person with Buyer (or any person acting on its behalf) in connection with any of the transactions contemplated under this Agreement. Buyer further agrees to indemnify and hold harmless Seller from any and all claims made or damages incurred (however described) arising from the Company business from and after the Execution Date.

### Indemnification by Seller

Section 5.05. Seller shall and hereby does indemnify and hold harmless Buyer, and shall pay to Buyer the amount of any damages incurred or arising, directly or indirectly, from or in connection with (a) any breach of any representation or warranty made by Seller in this Agreement or in any certificate delivered by Seller pursuant to this Agreement, (b) any breach by Seller of any covenant or obligation of Seller in this Agreement or related transaction documents, or (c) any claim by any person for brokerage or finder's fees or commissions or similar payments based upon any agreement or understanding alleged to have been made by such person with Seller (or any person acting on its behalf) in connection with any of the transactions contemplated under this Agreement. Seller further agrees to indemnify and hold harmless Buyer

from any and all claims made or damages incurred (however described) arising from the Company business prior to the Execution Date.

## ARTICLE 6. BOOKS AND RECORDS

Section 6.01. The books of account, minute books, stock record books, and other records of the Company, all of which have been made available, and at Closing will be delivered, to Buyer, are complete and correct, accurately and correctly reflect all transactions involving the Company and have been maintained in accordance with sound business practices. The minute books of the Company contain accurate and complete records of all meetings held of, and corporate action taken by, the shareholders, the Board of Directors, and committees of the Board of Directors of the Company, if any, and no meeting of any such shareholders, Board of Directors, or committee has been held for which minutes have not been prepared and are not contained in such minute books. At the Closing, all of those books and records will be in the possession of the Company.

## ARTICLE 7. MISCELLANEOUS

### No Brokers or Finders

Section 7.01. Seller and their agents have incurred no obligation or liability, contingent or otherwise, for brokerage or finders' fees or agents' commissions or any other similar payment in connection with this Agreement or the transactions contemplated hereunder.

### Non-assignability

Section 7.02. Neither this Agreement, nor any interest herein, shall be assignable by the Buyer without the prior written consent of the Seller.

### Governing Law

Section 7.03. All questions with respect to the construction of this Agreement, and the rights and liabilities of the parties hereto, shall be governed by the laws of the State of California.

### Inurement

Section 7.04. Subject to the restrictions against assignment as herein contained, this Agreement shall inure to the benefit of, and shall be binding upon, the assigns, successors in interest, personal representatives, estates, heirs, and legatees of each of the parties hereto.

### Severability

Section 7.05. If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement will remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

00104058

9

**Attorneys' Fees**

Section 7.06. In the event of any controversy, claim or dispute between the parties hereto, arising out of or relating to this agreement or the breach thereof, the prevailing party shall be entitled to recover from the losing party reasonable expenses, attorneys' fees and costs.

**Section Headings; Construction**

Section 7.07. The headings of Sections in this Agreement are provided for convenience only and will not affect its construction or interpretation. All references to "Section" or "Sections" refer to the corresponding Section or Sections of this Agreement. All words used in this Agreement will be construed to be of such gender or number as the circumstances require. Unless otherwise expressly provided, the word "including" does not limit the preceding words or terms and will be deemed to be followed by the words "without limitation." As used herein, the words "and" and "or" shall be construed to mean "and/or."

**Counterparts**

Section 7.08. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original of this Agreement and all of which, when taken together, will be deemed to constitute one and the same Agreement.

**Notices**

Section 7.09. All notices, consents, waivers, and other communications under this Agreement must be in writing and will be deemed to have been duly given when (a) delivered by hand (with written confirmation of receipt), or (b) the next business day, if sent during normal business hours by a nationally recognized overnight delivery service (receipt requested), in each case to the appropriate addresses set forth below the parties' signatures to this Agreement (or to such other addresses as a party may designate by notice to the other parties).

**Entire Agreement**

Section 7.10. This Agreement contains the entire agreement of the parties hereto, and supersedes any prior written or oral agreements between them concerning the subject matter contained herein. There are no representations, agreements, arrangements, or understandings, oral or written, between and among the parties hereto, relating to the subject matter contained in this agreement, which are not fully expressed herein.

Executed by the parties hereto as of January 1, 2010 at San Diego, California.

| BUYER | SELLER |
|---|---|
| JENNINGS CHILDREN'S TRUST, DATED OCTOBER 13, 2009 | JENNINGS FAMILY TRUST, DATED NOVEMBER 14, 1985 |

<div style="display:flex; gap:4em;">

APRIL M. GIFFIN,
CO-TRUSTEE

J. DOUGLASS JENNINGS, JR.,
CO-TRUSTEE

SARAH SUZANNE MURPHY,
CO-TRUSTEE

PEGGY L. JENNINGS,
CO-TRUSTEE

</div>

00104058